UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LINDA A. NNAJI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:20-cv-03192-TWP-MJD |
| | ) |
| DEPT. OF CHILD AND FAMILY SERVICES | ) |
| (DCS), SHELBY BAKER, AMY WALTERMIRE, | ) |
| and WILLIAM HANNON, | ) |
| | ) |
| Defendants. | ) |

**ENTRY ON DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on a Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendants Department of Child and Family Services ("DCS"), Family Case Manager Shelby Baker ("FCM Baker"), Local Office Director Amy Waltermire ("Director Waltermire"), and Family Case Manager William Hannon ("FCM Hannon") (collectively, "Defendants") (Filing No. 12). This action was initiated by *pro se* Plaintiff Linda A. Ms. Nnaji ("Ms. Nnaji") pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging that Defendants deprived her of her First, Fourth, and Fourteenth Amendment rights. (Filing No. 8.) Defendants seek dismissal, arguing the Amended Complaint "fails to identify a deprivation of any federal right", "fails to identify any specific acts or omissions taken by the defendants that resulted in constitutional injury", and "seeks … damages from the defendants sued in the[ir] official capacities." (Filing No. 12 at 1.) For the following reasons, the Motion is **granted**.

## I.   BACKGROUND

The following facts are not necessarily objectively true, but, as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Amended Complaint and

draws all inferences in favor of Ms. Nnaji as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Ms. Nnaji alleges that DCS Director Waltermire used a fake background check and manipulated information in order to place her grandson in foster care. Specifically, on June 3, 2020, Ms. Nnaji and her grandson ("Grandson") were assaulted by Ms. Nnaji's daughter, who is her Grandson's mother ([Filing No. 8 at 5](#)). After Ms. Nnaji drove home with Grandson, a police officer tried to pick him up from the house, but he refused to leave. *Id.* FCM Baker then went to Ms. Nnaji's residence, where Grandson informed her that he was being abused at his home and wanted to remain with Ms. Nnaji. *Id.* Ms. Nnaji asked FCM Baker why DCS kept closing "cases of child abuse" involving Grandson "when it was clear he was being beaten." *Id.* FCM Baker "didn't like" this question and told Ms. Nnaji that she needed to run a "background check" on her to see if she could place Grandson in her care. *Id.* FCM Baker then stepped outside the home, later returning with "results" that Ms. Nnaji had been "on the run since 1998 due to a fraud conviction" and that she had "a gun charge from 2004." *Id.* Though Ms. Nnaji denied these charges, FCM Baker took Grandson and placed him in foster care, where he remained for thirty-two days. *Id.* Before leaving, however, FCM Baker told Ms. Nnaji that she could attend a hearing on June 8, 2020, where she could ask the judge to waive her "criminal charges" and "consider her for guardianship" of Grandson. *Id.* at 5–6.

On June 8, 2020, FCM Baker sent a text message to Ms. Nnaji, informing her that she could not "recommend placing the Grandson with her" because Ms. Nnaji had a new charge: "perpetrator due to the concerns of kidnapping." *Id.* at 6. Eventually, guardianship of her Grandson was awarded to "an aunt in Colorado". Thereafter, Ms. Nnaji obtained "copies of her police records,"

and "realized that her criminal history had been altered." *Id.* When Ms. Nnaji "tried to correct the matter with DCS," it denied knowing about her criminal history or any background check. *Id.*

Ms. Nnaji then sued Defendants in this Court filing an Amended Complaint pursuant to Section 1983 on January 8, 2021, alleging the Defendants deprived her of her First, Fourth, and Fourteenth Amendment rights. ([Filing No. 8 at 2](#)). She seeks $1,000,000.00 in damages from the Defendants for (1) "altering" her criminal history "to prevent" her from obtaining "custody of Grandson or going to court", (2) "unnecessarily exposing" her family to COVID-19, (3) "failing to protect" Grandson from physical abuse, and (4) "making decisions based on personal feelings instead of what's best for the child." *Id.* at 7. Defendants then moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), ([Filing No. 12](#)).

## II.     LEGAL STANDARD

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. The allegations, however, must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (internal citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Ms. Nnaji is proceeding without counsel. *Pro se* complaints like that filed by Ms. Nnaji are construed liberally and held to a less stringent standard than formal pleadings drafted by

3

lawyers. *Obriecht v. Raemisch,* 517 F.3d 489, 491 n.2 (7th Cir. 2008). Liberal construction means that if the court can reasonably read the pleadings to state a valid claim on which the party could prevail, it should do so. Despite this liberal construction, the court will not invent legal arguments for litigants and is not obliged to accept as true legal conclusions or unsupported conclusions of fact. *County of McHenry v. Insurance Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006) (internal quotations and citations omitted).

Ms. Nnaji invokes 42 U.S.C. § 1983, "the ubiquitous tort remedy for deprivations of rights secured by federal law (primarily the Fourteenth Amendment) by persons acting under color of state law." *Jackson v. City of Joliet,* 715 F.2d 1200, 1201 (7th Cir. 1983). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

### III.  DISCUSSION

Defendants contend that Ms. Nnaji's Amended Complaint "fails to identify a violation of any right protected by the First, Fourth, or Fourteenth Amendments," "fails to identify how the acts or omissions allegedly taken by defendants violated her constitutional rights" (and, in fact, "fails to identify any specific action taken by" Director Waltermire or FCM Hannon), and impermissibly (under the Eleventh Amendment) "seeks damages against state employees sued in their official capacities." (Filing No. 13 at 1.)

Defendants argue that Ms. Nnaji does not "identify a violation of [any] federal right." *Id.* at 4. As for her "First Amendment claim," Ms. Nnaji does not allege "that she engaged in any protected activity," with no indication that "she engaged in speech, press, religion, petition, or assembly." *Id.* (citing U.S. Const. amend. I). Regarding her "Fourth Amendment claim," Defendants contend that Ms. Nnaji fails to allege that "any of the defendants searched or seized

4

*her* person or property." *Id.* (emphasis in original) (citing U.S. Const. amend. IV; *Xiong v. Wagner*, 700 F.3d 282, 289 (7th Cir. 2012) (only "where the child himself brings a claim regarding his initial removal, the Fourth Amendment provides the proper analytical framework")). Finally, as to her "Fourteenth Amendment claim," Ms. Nnaji does not allege any "cognizable due process right." *Id.* (citing U.S. Const. amend. XIV). Though the Fourteenth Amendment generally protects the right to associate with relatives, (and she does not claim "that she cannot associate with" Grandson), Ms. Nnaji does not allege that she had "custodial guardianship" of Grandson or that she had a "legal right to custodial placement," when "only parents have the fundamental right 'to make decisions concerning the care, custody, and control of their children.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 66 (2000)).

Even if Ms. Nnaji's constitutional rights were violated, Defendants argue the Amended Complaint lacks "any assertion that any of the defendants' actions or omissions violated them." *Id.* at 4–5. First, the Amended Complaint is silent as to *any* act or omission of FCM Hannon. *Id.* at 5. Moreover, the "only mention" of Director Waltermire in the Amended Complaint is the "bald conclusion" that she and FCM Baker "'used a fake background check'" on Ms. Nnaji. *Id.* (quoting [Filing No. 8 at 2](Filing No. 8 at 2)). But "apart from this conclusory statement," the Amended Complaint contains no "factual allegation" of Director Waltermire's involvement. *Id.* Additionally, the Amended Complaint actually alleges that FCM Baker "was performing her job in the normal course of duty", as background checks are "required" for relatives or *de facto* custodians before placement under Indiana Code § 31-34-6-2(c). The Amended Complaint fails to "state how or when" she falsified Ms. Nnaji's criminal history. *Id.*

Finally, Defendants contend that Ms. Nnaji cannot pursue the $1,000,000.00 damages sought against them in their official capacities because "[t]he Eleventh Amendment bars 'any suit

in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.'" *Id.* (quoting U.S. Const. amend. XI). Because "immunity from suit 'extends to state agencies and state officials sued in their official capacities," *id.* (quoting *de Lima Silva v. Department of Corrections*, 917 F.3d 546 (7th Cir. 2019)), and Ms. Nnaji sues all the individual defendants in their official capacities as employees of DCS, she is "barred from recovering the relief she seeks," *id.*

In response, Ms. Nnaji submits "amended claim(s) and answer" to Defendants' Motion to Dismiss (Filing No. 16 at 2). She asserts that "a genuine issue of material fact does exist", (mistakenly advancing this litigation to the summary judgment stage), and devotes much of the filing to additional narrative accounting of events, including an update that she "was awarded full guardianship" of Grandson. *Id.* at 2, 15, *passim*. Impermissibly, Ms. Nnaji uses the filing to remove and add defendants (for example, she removes Director Waltermire and adds Indiana Governor Eric Holcomb and Director of DCS Terry Stigdon), to add claims (such as for intentional infliction of emotional distress ("IIED"), negligence, "abuse of process," and "frivolous litigation"), and to change the damages sought (from $1,000,000.00 to $10,000,000.00). *Id.* at 2, 11, 14.

Defendants reply that Ms. Nnaji's filing should be "stricken to the extent it attempts to amend the complaint" and that it "fails to explain or cure the defects of the" Amended Complaint (Filing No. 17 at 1). First, the Motion should be denied "[t]o the extent that the Court construes [it] as a motion for leave to file a second amended complaint". *Id.* at 2. Indeed, any amendment would be futile: "Ms. Nnaji's complaint, amended complaint, and the response all fail to state a claim upon which relief can be granted." *Id.* (citing *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997)). Defendants continue that to the extent

6

the Court construes the filing as a response brief, Ms. Nnaji has "failed to refute the Defendants' Motion to Dismiss." *Id.* Defendants first note that Director Waltermire should be dismissed because she "is not named on the list of defendants on the first page of the response"; in fact, she is not mentioned "at all." *Id.* at 2–3. And all the other Defendants should be dismissed because "there are no facts to support [Ms. Nnaji's] claims, apart from naked assertions of unsubstantiated misconduct." *Id.* at 3.

Defendants assert that although some of Ms. Nnaji's filing purports to respond to Defendants' arguments, she does little to engage in the issues presented and cites only passingly to authority (in the context of stating the standard of review for motions to dismiss). (*See* Filing No. 16) Ms. Nnaji also seemingly seeks leave to again amend her complaint: "Plaintiff has been given the right to present a claim, for which relief can be granted through the amending of the plaintiff[']s initial filing." *Id.* at 4.

Defendants contend the allegations in Ms. Nnaji's Amended Complaint do not "constitute a deprivation of her federal rights." (Filing No. 17 at 4.) She has not alleged that she had "custody or guardianship of" Grandson at the time of removal, so, "absent a court order, she had no right to have the child placed with her." *Id.* The Fourteenth Amendment does not guarantee a grandparent's right to obtain custodial placement of a child. *See Xiong*, 700 F.3d at 289. As for the other constitutional claims, because "Ms. Nnaji does not mention either the First or Fourth Amendments in the response . . . , she appears to have abandoned these claims." *Id.* Moreover, DCS (and Governor Holcomb and Director Stigdon, if the filing is construed as a motion for leave to amend) should be dismissed because no facts suggest "that the individual defendants are personally liable." *Id.* at 4–5 (citing *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 614 (7th Cir. 2002) ("[i]t is well-established that a plaintiff only may bring a § 1983 claim against those

7

individuals personally responsible for the constitutional deprivation.")). Additionally, though Ms. Nnaji's filing "recites the elements" of an IIED claim, she has not pled facts to support that claim. *Id.* at 5 (citing *Kluge v. Brownsburg Community School Corporation*, 432 F. Supp. 3d 823, 852 (S.D. Ind. 2020) (noting that liability for IIED is found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community")). Finally, Defendants conclude that injunctive and declaratory relief is no longer warranted since there is no ongoing harm: "Ms. Nnaji states that a judge recently awarded her custody over" Grandson. *Id.* at 6. Because "there is no threat of ongoing or continuing violation of federal right[s], injunctive and declaratory relief is not available." *Id.* (citing *Plato v. Huyvaert*, 2021 WL 1165180, at *4 (S.D. Ind. Mar. 26, 2021)).

Though the Court has generously construed Ms. Nnaji's Amended Complaint, it agrees with Defendants that it must be dismissed. Ms. Nnaji has failed to meaningfully respond to any of the substantive arguments made by Defendants and instead tendered a filing that could be read as (1) an unsanctioned[1] amended complaint—*see, e.g.*, Filing No. 16 at 2 ("Such amended claim(s) . . . shall now be served . . ."), (2) a mislabeled motion for leave to file an amended complaint—*see, e.g.*, *id.* at 4 ("[R]elief can be granted through the amending of the plaintiff[']s initial filing."), or (3) a legally-deficient response brief—*see, e.g.*, *id. passim* (relaying new and reiterating already-pled facts instead of responding to legal arguments of Defendants). Because "[f]ailure to respond to an argument . . . results in waiver," *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (citations omitted), Defendants' Motion to Dismiss is **granted**.

---

[1] Nnaji writes that she has "been granted the right to amend." (Filing No. 16 at 6.) The Court, however, has not yet granted Nnaji leave to file any amended complaint (*cf.* Filing No. 11 (denying as moot motion seeking leave to amend complaint because Nnaji could do so once without leave of court)).

## IV.  CONCLUSION

For the reasons described above, the Court **GRANTS** Defendants' Motion to Dismiss, (Filing No. 12), and Ms. Nnaji's claims are **DISMISSED without prejudice**.  Though Ms. Nnaji has already "amended" her Complaint once, she did so merely to correct Defendants' ZIP Codes (*see* Filing No. 7 at 1 ("I am sending a new/amended complaint with the ZIP codes of the Defendants corrected.").)  To the extent that she wishes to remove or add defendants (*e.g.*, Director Waltermire, Governor Holcomb, Director Stigdon, etc.), add new claims (*e.g.*, IIED, negligence, etc.), or make a change in damages being sought (*e.g.*, from $1,000,000.00 to $10,000,000.00), Ms. Nnaji must file a second amended complaint that substantially tracks the form of her first two complaints (*see* Filing No. 1; Filing No. 8). If filed, Ms. Nnaji is granted leave to file a second amended complaint within **fourteen (14) days** of the date of this Entry. If a second amended complaint is not filed, it will be the operative complaint. If nothing is filed, this dismissal will convert to a dismissal with prejudice and a final judgment will issue.

**SO ORDERED.**

Date:  5/14/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Linda A. Ms. Nnaji
408 East 38th Street
Anderson, Indiana  46013

Alexander Robert Carlisle
OFFICE OF THE ATTORNEY GENERAL
Alexander.Carlisle@atg.in.gov